WM 17-353 PO
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
LUIS UZHCA and MARIA SMITH,

                         Plaintiffs,

      -against-

WAL-MART STORES, INC., SAM'S EAST, INC. and
INLAND-GREENBURGH DELAWARE BUSINESS
TRUST,

                         Defendants.
----------------------------------------------------------------X

Docket No.: **17CV03850**

**STATEMENT OF**
**MATERIAL FACTS**

## PRELIMINARY STATEMENT

This is an action by LUIS UZHCA[1] [the plaintiff] to recover for personal injuries allegedly suffered on May 29, 2015 at the premises of his employer, American Paper Mills Supply, LLC [American Paper], at 15 S. Depot Plaza, Tarrytown, New York.

> Plaintiff was about to unload a [trailer] and attempted to open the left rear door of subject [trailer] when the contents inside the truck/trailer immediately moved and pushed the left rear door onto Plaintiff, causing Plaintiff to fall to the ground and sustain serious injuries when the contents of said [trailer] fell upon Plaintiff, LUIZ UZHCA.

(Ex. C, ¶ 4 [Plaintiff's Response to Defendant's First Set of Interrogatories]; Ex. A, ¶¶ 14, 19-23[Complaint]).

---

1. Plaintiff, MARIA SMITH, asserts a consortium claim (Ex. A, ¶¶ 42-45).

Plaintiff alleges that the trailer at issue contained cardboard bales from the Sam's Club[2] in Elmsford, New York (Ex. A, ¶ 17). He further alleges that SAM'S EAST, INC.[3], as the "Shipper" of the cardboard bales, was negligent in violating a "guide" from ISRI [The Institute of Scrap Recycling Industries, Inc.] in "loading cardboard bales more than two high at the rear of the trailer close to the doors" (Ex. K, p. 3 [Rugemer Report]).

## STATEMENT OF MATERIAL FACTS ON MOTION PURSUANT TO LCR 56.1

Movants/defendants, WAL-MART STORES, INC. and SAM'S EAST, INC., as and for their Statement of Material Facts on Motion for Summary Judgment Pursuant to Local Civil Rule 56.1 and mindful of this Court's requirement of brevity, respectfully allege as hereinafter:

### I. Plaintiff, Who Opened The Left Hand Trailer Door Despite His Observation That The Trailer's Contents Were Touching That Door, Was the Sole Proximate Cause of His Accident

#### A. Plaintiff's Sworn Testimony

1. Plaintiff testified that he was involved in a work-related accident on May 29, 2015 at approximately 1:00 p.m. while at the premises of his employer (Ex. D, p. 8, 15, 25, 38).

2. Generally, plaintiff's job duties included getting a truck cab, securing it to one of approximately 10 or 11 trailers parked on the site, using the truck cab to move the chosen trailer to within eight or 10 feet of the loading dock, opening the two rear doors of that trailer, and then backing that trailer the rest of the way into the loading dock (Ex. D, p. 27, 34-35, 52). He had done

---

2. It is questionable whether plaintiff can establish that the trailer came from Sam's Club at the time of trial. For the purposes of this motion only, however, it is presumed that the trailer came from the Sam's Club in Elmsford.

3. SAM'S EAST, INC. is the operator of the Sam's Club in Elsmford, New York. WAL-MART STORES, INC. (now known as Walmart Inc.) is ultimately, but indirectly, the parent company of SAM'S EAST, INC.

this approximately 40 to 50 times before the day of his accident (Ex. D, p. 66).

3. On May 29, 2015, at approximately 10:00 a.m., plaintiff's supervisor, Winston Ash, identified a trailer that he wanted plaintiff to move to the loading dock (Ex. D, p. 36, 51-52).

4. Plaintiff retrieved a truck cab and backed it into the trailer that he was directed to move, causing the two to connect (Ex. D, p. 54).

5. He got out of the cab to make sure that there was a good connection between the truck and the trailer and then lifted the trailer's legs so that it could be moved (Ex. D, p. 55-56).

6. Plaintiff backed the trailer to a position approximately eight feet away from the loading dock (Ex. D, p. 56-57).

7. Plaintiff got out of the truck cab and went to the rear of the trailer (Ex. D, p. 57).

8. Facing the rear of the trailer, plaintiff opened the right hand door and secured it with the safety so it wouldn't close (Ex. D, p. 60-61).

9. At that point, plaintiff had an unobstructed view of the contents of the trailer, which he described as cardboard "bales of about 600 to 900 pounds each" (Ex. D, p. 61, 63).

10. Plaintiff observed that the bottom bale was approximately four inches away from the left hand door, but that the top bale was actually touching the left hand door (Ex. D, p. 62-63). His testimony was as follows:

> Q: You said a few moments ago about seeing cardboard touching the door.
>
> A: Against the other door, when I opened [the right door] it was against the other door.
>
> Q: Can you explain that, when you opened which door it was against which door?

> A: When I opened the right door, I could see from the left door that the carton was touching the top of it.
>
> Q: The carton was touching the top of the left door?
>
> A: Yes.
>
> Q: So, before you opened the left door, you had observed a bundle of cardboard touching the left door; is that correct?
>
> A: Yes, it always comes like that, but at the bottom there is, like a separation.
>
> Q: But I am asking about the top.
>
> A: Yes, the top was touching [the left hand door].

(Ex. D, p. 64-65).

11. Despite observing that the trailer's contents were in contact with the left hand door, the plaintiff opened the lock on the left hand door and the left hand door swung into plaintiff, knocking him to the ground (Ex. D, p. 67-68).

12. Plaintiff observed two bales fall out and tried to drag himself backwards (Ex. D, p. 68). He saw a third bale falling slowly from the trailer and put his foot out in an attempt to "withhold it" (Ex. D, p. 69-70).

**B. Sworn Testimony of Brian Kelly, former truck driver for American Paper**

13. Brian Kelly, the truck driver for American Paper in May of 2015, testified that the plaintiff erred in opening the left hand door after observing the trailer's contents in contact with that door:

> [I]if you're ever going to open the back doors - - if you have barn doors on the trailer . . . you open one door behind and you look in and if the load looks good, you open the door and then you proceed to open

4

> the other door. If he would open the one door and looked in and he saw the cardboard had shifted or something, it was hanging, it would have been hanging against the other door. Those cardboard things were eight feet wide, maybe wider so the other door would have held it in place and he could have called a high/low or whatever to come out and just push that in and then he could have safely backed it into the loading dock, but if you open both doors, you don't have a shot.

(Ex. H, p. 42-43; *see also* Ex. H, p. 80-82).

### C. Sworn Testimony of SAM'S EAST by Robert O'Neill

14. Robert O'Neill, general merchandise manager for the Elmsford Sam's Club in 2015, testified that an individual opening the rear doors of a trailer should "check in and see if any of the load shifted" before he opened both barn doors (Ex. G, p. 122).

### D. Sworn Testimony of Plaintiff's Expert[4]

15. Plaintiff's expert, Brooks Rugemer, concurred that an individual opening the left hand door of a trailer is required, first, to look inside to be sure nothing is up against that door or he runs the risk of being injured by a load falling from the trailer when that door was opened (Ex. L, p. 38-39).

---

4. Defendants do not here submit the testimony of their expert and/or a sworn expert affidavit as they verily believe that plaintiffs' expert has failed, as discussed *infra*, to establish or even raise an issue of fact that SAM'S EAST, INC. violated industry wide standards. Defendants reserve the right to submit an affidavit from their expert on reply.

II. **AMERICAN PAPER AND SAM'S EAST, INC. WERE IN AGREEMENT BOTH THAT THE TRAILERS CONTAINING RECYCLABLE CARDBOARD COULD BE FULLY LOADED AND THAT IT WAS AMERICAN PAPER THAT WAS MANDATED TO INSPECT THE TRAILER AND MAKE SURE IT WAS SAFE FOR TRANSPORT TO THE PREMISES OF AMERICAN PAPER**

A. **The Process of Transporting Recyclable Cardboard**

16. The Sam's Club in Elmsford, New York was a customer of American Paper in May of 2015 (Ex. E, p. 19-20, Ex. F, p. 9, Ex. G, p. 38). The process by which recyclable cardboard was moved from the Sam's Club in Elmsford, New York to American Paper at 15 S. Depot Plaza, Tarrytown, New York was as follows.

17. An American Paper driver brought an empty 53-foot trailer to the Sam's Club loading dock (Ex. G, p. 47, 54). The rear doors of the trailer were opened in the Sam's Club lot by that driver and the trailer was then backed into bay seven at the Sam's Club loading dock and left there (Ex. G, p. 67). Sam's Club employees would bale recyclable cardboard as necessary into five foot wide by 36 inch high bales and place those bales into the trailer with a forklift (Ex. G, p. 40-42, 44-46, 54). When the trailer was almost full, Sam's Club would call American Paper for a pickup (Ex. E, p. 12; Ex. F, p. 12; Ex. G, p. 53-54). By the time American Paper responded approximately a day later, the trailer was usually completely full (Ex. G, p. 68).

18. The responding American Paper driver would bring another empty trailer to the Sam's Club (Ex. G, p. 69). He would unhook the empty trailer in the parking lot and then hook up to the full trailer in bay seven (Ex. G, p. 69-70). He then pulled the full trailer about 60 to 80 feet away from the loading dock with its rear doors still open over the bump of a storm water drain, made a left hand turn, and parked the full trailer on the side of the building (Ex. G, p. 72-73, 74, 76, 79). He would then unhook from the full trailer and re-hook to the empty trailer so that the empty trailer could be backed into bay seven. He then had to rehook to the full trailer, inspect the load,

close that trailer's doors, and drive to American Paper (Ex. H, 17-18). The drive took about five to 10 minutes over very hilly roads and then down a steep incline into the American Paper depot (Ex. h, P. 107-108).

### B. American Paper Did Not Promulgate Any Written Rules As To How To Pack Its Trailer and Raised No Objection As To How Sam's Club Packed The Trailers

19. A written subpoena served upon American Paper at the inception of the lawsuit called for, amongst other things, "written policies and procedures issued by or on behalf of American Paper" for the loading of its trailers (Ex. I, para 6). Counsel for American Paper responded via email that his client could not locate any responsive documents (Ex. J).

20. At his deposition, Winston Ash from American Paper testified that trailers were routinely packed until they were full (Ex. E, p. 77). His testimony was as follows:

> Q: Was there any policy or procedure that your company had, American Paper, with regard to these trailers as far as how full a customer such as Sam's Club could pack a trailer before it was picked up by your driver?
>
> A: I mean, there's no overpacking, right, because you can only pack it to the end of the trailer. That's it. There's a silver - - I don't know - - piece of metal that's as far as you can pack it. **You pack it until it's full at that piece, and that's it.**

(Ex. E, p. 77-78) (emphasis added).

21. Winston Ash continued that every American Paper customer packed its bales to the ceiling of the trailers (Ex. E, p. 99). The only difference between customers was that some of them packed the trailers to within six inches of the ceiling while others packed the trailers to within 12 inches of the ceiling (Ex. E, p. 99). Sam's Club packed to within 12 inches of the ceiling (Ex. E, p. 99).

7

22. Brian Kelly from American Paper testified that he was unaware of any discussions having been held with Sam's Club as to how Sam's Club should pack the trailers (Ex. H, p. 103-104).

### C. Lack of Any Prior Incident of Freight Falling From a Trailer Packed At the Sam's Club

23. Robert O'Neill from Sam's Club testified that he inspected the loading of the cardboard trailer a few times a day - every time he went back to unlock the compactor for use by an associate (Ex. G, p. 89). If he ever observed any bales that were tilted, which only occurred a few times in his then seven-year employment with SAM'S EAST, INC., he had a forklift operator remove those bales and restack them in the trailer (Ex. G, p. 89-91).

24. Robert O'Neill also testified that he had seen approximately 50 American Paper trailers being pulled away from the loading dock with open doors and go over the bump caused by the storm water drain and that he never observed any of the bales stacked inside those trailers move (Ex. G, p. 76-78).

25. Winston Ash from American Paper testified that he did not remember ever having an issue with how Sam's Club loaded the American Paper trailers with bales of recyclable cardboard (Ex. E, p. 89).

26. Brian Kelly from American Paper testified that he never picked up a loaded trailer from the Elmsford Sam's Club that had any problems or issues (Ex. H, p. 22).

> Q: Again, just to be clear, during your entire one year history at American Paper Mills, you don't recall ever having an issue or a problem with how the trailers were loaded at the Sam's Club; is that correct?
>
> A: No, I never had a problem there.

(Ex H, p. 36).

8

27. Plaintiff's co-worker, Cesar Javez, testified that he had observed loads from Sam's Club in the past that contained bales that had flipped over or that were on their sides, but he attributed the conditions of the contents of those trailers to "what happened in between [Sam's Club] and the yard . . . It all depend [sic] who's driving or how the condition of the roads are" (Ex. F, p. 67).

### D. It Is Undisputed That It Was American Paper's Responsibility to Ensure the Trailer was Properly Loaded Before It Was Brought Back to The Premises at 15 S. Depot Plaza

28. Winston Ash testified that it was the responsibility of the American Paper driver to "check the trailer to make sure it's properly loaded" before the trailer left Sam's Club (Ex. E, p. 15).

29. Winston Ash continued that if the bales were not properly loaded, American Paper would not have taken the "load in the first place." (Ex. E, p. 95).

30. Brian Kelly concurred that it was his responsibility to check the trailer load before he closed the trailer doors (Ex. H, p. 19, 36). His testimony was as follows:

> Q: Was it your policy and procedure during your year tenure at American Paper Mills to check that load and make sure it was safe and secured before you closed the door and took off?
>
> A: I checked every load before I took off, yes.
>
> Q: Was that something that was required of you by American Paper Mills?
>
> A: **It's required by law**, never mind American Paper Mills, yeah.

(Ex. H, 37) (emphasis added).

9

## III. The Ipse Dixit Opinion of Plaintiff's Expert That Sam's Club Violated A Guide Found On the Internet Is Insufficient To Withstand Summary Judgment

### A. Plaintiff's Expert

31. Plaintiff's expert, Brooks Rugemer, reviewed only three transcripts prior to issuing his first report: the testimony of plaintiff from September 25, 2018, the testimony of Cesar Javez from November 29, 2018, and the testimony of Winston Ash from December 4, 2018 (Ex. L, p. 2).

32. Mr. Rugemer testified that the packing of cardboard bales in an enclosed trailer does not require any additional load securement devices (Ex. L, p. 30). "The cargo that's within an enclosed box trailer does not need additional load securement." (Ex. L, p. 57). That is because freight contained within the walls of a trailer and leaning against other freight is generally considered secure and "no other devices are required" (Ex. L, p. 31-32, 64).

33. Brooks Rugemer testified that he has been involved with close to 900 cases as an expert, but never gave testimony in any action involving injuries allegedly suffered as the result of contents falling from the rear of a trailer upon the trailer door being opened (Ex., p. 53-54).

34. The only alleged "fault" that Mr. Rugemer found with Sam's Club is that it purportedly failed to follow an ISRI guideline that cardboard bales should not be stacked "more than two high at the rear of the trailer close to the doors."[5]

---

5. While there is a difference in testimony over whether the bales were stacked two or three high in the trailers that came from Sam's Club (Robert O'Neill testified that the bales were stacked three high. Brian Kelly testified that the bales were stacked only two high), that discrepancy is irrelevant as plaintiff has not and cannot establish that the guide from the internet is an industry wide standard and, in any event, the stacking of bales three high is not a latent defect and does not result in liability under the *Savage* Rule (Defendants' Memorandum of Law, Point III).

35. Neither Mr. Rugemer nor his employer, Robson Forensic, are members of ISRI (Ex. L, p. 54). Brooks Rugemer testified that his "understanding" of ISRI is that it is a "trade group that issues best practices on the generation and shipping and handling of recycled materials" (Ex. L, p. 19, 25). Mr. Rugemer was unaware whether American Paper, SAM'S EAST, INC., Wal-Mart or any other big box retailer was a member of ISRI (Ex. L, p. 25-26). Mr. Rugemer did not know whether ISRI provided its guidelines to American Paper or SAM'S EAST, INC. (Ex. L, p. 29). Mr. Rugemer was unable to point to any case where the court held that a violation of this ISRI guideline established liability upon a party or where the court had adopted this ISRI guideline as an industry standard of care (Ex. L, p. 50-51).

Dated: Northport, New York
September 3, 2019

_____
PATRICIA A. O'CONNOR