USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/7/2021

**SONIN & GENIS**
ATTORNEYS AND COUNSELORS AT LAW LLC
ONE FORDHAM PLAZA, SUITE 907
BRONX, NEW YORK 10458
TEL: 718.561.4444
FAX: 718.561.2162
WWW.SONINGENIS.COM

*AFFILIATED OFFICE*
ROBERT J. GENIS
C/O PAUL BLEIFER, ESQ.
16 SKYLINE DRIVE, BOX 298
MONTVILLE, NJ 07045
T: 201.592.1115
F: 201.944.8630

ROBERT J. GENIS*
SHERRI SONIN (1957-2017)
*MEMBER N.Y. & N.J.

June 4, 2021

The Honorable Nelson S. Roman
United States District Judge
   Southern District of New York
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

RE:   Uzhca, et. al. v. Wal-Mart Stores, Inc., et. al.
        17-CV-03850-NSR

Dear Judge Roman:

Plaintiffs' application to modify Judge McCarthy's May 24, 2021 Order on the basis that this Court intended to fully reopen discovery for general purposes is denied. This matter was referred to Judge McCarthy for the purpose of deciding outstanding discovery disputes. To the extent Plaintiffs are requesting this Court to reconsider or review Judge McCarthy's rulings, Plaintiffs must provide a copy of the transcript of Judge McCarthy's rulings. The Clerk of the Court is directed to terminate the motion at ECF No. 50.

SO ORDERED:

Dated: 6/7/2021
White Plains, NY _____
HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE

**MEMO ENDORSED**

   This correspondence is in regard to the Conference of May 14, 2021 and your Order to reopen discovery, specifically rulings made by Magistrate Judge McCarthy on May 25, 2021. As an initial matter, the undersigned attempted to file this as an Appeal of the Magistrate's Ruling on June 3, 2021. However, the Court's ECF rejected the attempt and instructed us to file the papers an Objection to the Magistrate's Recommendations and Rulings under the 'Other Answers' tab. However, as the rulings in question were only entered as minute entries and not as a formal Order, the ECF rejects any attempt to file during the upload process.

   Plaintiffs, Luis Uzhca and Maria Smith respectfully request this Honorable Court to reconsider the magistrate judge's Order/Recommendations of May 25, 2021, and files these objections, as authorized by Federal Rule of Civil Procedure 72(b)(2).

<u>Preliminary Background</u>

1. This Honorable Court is aware of the long procedural background of this matter and

   the underlying nature of the matter.

2. On May 14, 2021, this Honorable Court Ordered that discovery be re-opened. (**Exhibit**

**A**[1], p. 32, l. 12-25; **Docket Entry # 136**).

3.   Magistrate McCarthy has subsequently failed to comply with District Judge Roman's Order and has not permitted the plaintiff to obtain discovery and improperly quashed plaintiffs' trial subpoenas, notices for deposition and production, but allowed the defendants to obtain discovery. (*See*, Minute Entry of May 25, 2021).

<u>Discovery Incomplete</u>

4.   Judge Roman issued said Order because defendants failed to produce all discovery that it should have and engaged in belated discovery. **Docket Entry 104.** The defendants' missing records should have been produced pursuant to voluntary disclosure, as well as in plaintiffs' demands, and were also sought in plaintiffs' trial subpoenas, served on defendants, **Docket Entry 127, Exhibits 1-4**, and were a basis of plaintiffs' request to charge with respect to missing records and witnesses, **Docket Entry 127**, and motions in limine, *See* **Docket Entries 87-89**, **91**, **106-107**, and **110**.

5.   Defendants' belatedly served discovery subpoenas on non-parties, (**Exhibit E**), Plaintiffs objected and asked this Honorable Court to preclude or quash, **Docket Entries 132, 134**.

6.   With respect to plaintiffs' trial subpoenas served on defendants,[2] which sought among other items, records of prior incidents of falling objects injuring someone. Bereft of supporting proof, defendants *claimed* that there were no prior incidents of falling objects injuring, however, plaintiff noted fifteen (15) other reported federal court

---

[1] Pursuant to Docket Entry 149, the transcript will be available to the public on September 2, 2021.
[2] While plaintiff and defendants previously agreed on what and how defendants were to comply with said subpoenas, on May 11th, defendants chose to renege on said agreement, and then belatedly moved to quash same. (**Docket Entry 130, Exhibit #1,** and **Docket Entry 132, Exhibit #1**).

decisions of cases of such prior incidents, with two dealing directly with involving

falling objects while a person was unloading a trailer, as well as one that defense

counsel herein represented defendants in. **Docket # 132**. The facts clearly belie the

defendants' naked and uncorroborated claims.

7. The issues of defendants' videos of the loading of the subject trailer are addressed

   *supra*, ¶¶ 33-42.

Judge Roman's Order

8. These issues were addressed on May 14, 2021, when this Honorable Court held a pre-

   trial conference with trial attorneys for the parties. (See transcript of same, annexed

   hereto as **Exhibit A**).

9. At the conference, this Honorable Court, in response to Defendants' numerous failures

   to provide ALL discovery to the plaintiff in a timely manner, removed the matter from

   the trial calendar, "**reopened discovery**", and sent the matter back to Magistrate

   McCarthy. (**Exhibit A**, P. 32 L. 13, 23-25; see also **Docket Entry # 136**).

   This is what you are going to do. Stop. This is what you are going to do**: I am
   reopening discovery,** and you need to go back to the magistrate judge, and you need
   to sort all of these issues out, and then when you have completed your discovery
   disputes, you can then come before me. Tell me that you are ready for trial. I will set a
   motion in limine, and then you can proceed to trial.
   (**Exhibit A**, p. 32, l. 12-18)

   Thank you, gentleman. The conference is over. Contact the magistrate judge. You tell
   them that – the magistrate judge **I have reopened discovery; that discovery has
   not been completed and that once discovery is complete and you resolve all of
   those discovery issues with the magistrate judge**, you can then appear before me,
   and I will give you a trial date. Thank you very much.
   (**Exhibit A**, p. 32, l. 21- p. 33, l. 2) (emphasis added).

10. Confirming the foregoing, Judge Roman entered the Minute Entry on May 14, 2021.

3

**Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for <u>General Pretrial (includes scheduling, discovery</u>, non-dispositive pretrial motions, and settlement)** ….

11. The Order by Judge Roman made clear that this case was being referred not for a limited and specific issue, but for "**General Pretrial (includes scheduling, discovery….**" (**Docket Entry 136**). This clearly means just what Judge Roman stated, that discovery was not completed and needed to be reopened, and general discovery needs to be conducted.

12. On May 20, 2021, in furtherance of Judge Roman's determination, and to assist the defendants in producing all discovery, plaintiff served a notice for deposition and a discovery notice. **Exhibits B and C**.

13. Defendants objected to said demands. **Docket Entry 142**. Plaintiff responded to this objection. **Docket Entry 143**.

14. On May 24, 2021, Magistrate McCarthy held a teleconference with the parties regarding the state of discovery.

15. On May 24, 2021, Magistrate McCarthy mistakenly interpreted this Honorable Court's direction that discovery was to be "reopened", (**Exhibit A**, P. 32, L. 13-16, 23-25; **Docket Entry # 136**), to mean that the only issue was to ratify defendants' belated discovery production and improper subpoenas. (*See*, Minute Entry of May 25, 2021)

16. Contrary to this Honorable Court's Order of May 14, 2021, which reopened Discovery (**Docket Entry 136**), Judge McCarthy determined that Plaintiffs were not entitled to re-open discovery, and quashed plaintiffs' trial subpoenas for records (**Docket Entry 130, Exhibit #2**) and vacated plaintiffs' notice for deposition and discovery demand

(**Exhibits B and C**). (*See*, Minute Entry of May 25, 2021)

17. Judge McCarthy, however, determined that defendants were entitled to re-open discovery, and permitted the defendants to serve discovery subpoenas on non-parties, including a law firm (for potentially privileged materials), that the belatedly exchanged surveillance videos were now deemed timely served, and directed plaintiff to serve an authorization on defendants allowing them to obtain records from a non-party.

18. On May 27, 2021, whether as acknowledgment of Judge Roman's Order that discovery was reopened and that Magistrate McCarthy was wrong, or because the Magistrate's one sided ruling emboldened them, Defendants served a new discovery demand, seeking additional authorizations from plaintiff. **Exhibit D.**[3]

19. In other words, Judge McCarthy in essence permitted unilateral discovery by defendants, but virtually no discovery by plaintiff; hardly the "reopening" of "complete" discovery directed by Judge Roman.

20. It is respectfully submitted Magistrate McCarthy's rulings are contrary to the spirit and letter of this Honorable Court's Order of May 14, 2021.

<u>Errors By Magistrate</u>

21. At the outset, Plaintiff acknowledges Magistrate McCarthy did not have access to the transcript of this Honorable Court's May 14, 2021, pre-trial conference with the parties where, as noted above, this Honorable Court stated:

> This is what you are going to do. Stop. This is what you are going to do**: I am reopening discovery,** and you need to go back to the magistrate judge, and you need to sort all of these issues out, and then when you have completed your discovery

---

[3] If *arguendo* this Honorable Court denies the relief sought herein, then plaintiff alternatively requests that defendants' discovery demands be vacated and subpoenas be quashed, as fairness and equity would require such a result.

disputes, you can then come before me. Tell me that you are ready for trial. I will set a motion in limine, and then you can proceed to trial.
(**Exhibit A**, p. 32, l. 12-18)

Thank you, gentleman. The conference is over. Contact the magistrate judge. You tell them that – the magistrate judge **I have reopened discovery; that discovery has not been completed....**
 (**Exhibit A**, p. 32, l. 21-24)

22. Magistrate McCarthy, however, did have the Order by Judge Roman which made clear that this case was being referred not for a limited and specific issue, but for "**General Pretrial (includes scheduling, discovery....**" (**Docket Entry 136**).

23. As discovery was reopened, Plaintiff was entitled to serve additional discovery demands upon the defendant. As noted above, defendants have served new discovery demands on plaintiff. (**Exhibit D**).

24. There is nothing in this Honorable Court's statement reopening discovery that suggests or implies any limitation to the discovery that could be sought, the issues that could be probed or who could seek additional discovery.

25. Magistrate McCarthy erred in quashing our Plaintiff's notices of deposition (**Exhibit B**) and discovery notices (**Exhibit C**), served pursuant to this Honorable Court's reopening of discovery, as well as plaintiffs' trial subpoenas (**Docket Entry 130, Exhibit #2**), served well before discovery was reopened.

26. Magistrate McCarthy's Order of May 25, 2021 is contrary to this Honorable Court's May 14, 2021 directions and the May 14, 2021 Order.

27. The May 25, 2021 Magistrate Order essentially allowed only one way discovery. Defendants, whose belated post discovery demands and responses triggered the remand to the Magistrate, can proceed with their post-discovery subpoenas on two non-

parties, one of which seeks potentially privileged lawyer files,[4] and are allowed to use their belatedly exchanged surveillance videos.

28. Plaintiffs, on the other hand, are prohibited from seeking discovery from the defendants in the form of documents and records which the defendants possess but elected not to produce.

29. One of the defendants' refrains since the filing of the Joint Pre-Trial Conference Order April 12, 2021, has been they have no obligation to produce documents that they were previously obligated to furnish but failed to do so, and that were previously subpoenaed for trial by plaintiffs, because discovery was over. (*See e.g.*, **Docket Entries 94**, **96**, and **100**).[5]

30. As this Honorable Court reopened discovery on May 14, 2021, (**Docket Entry 136**), defendants no longer have that justification, but for the mistake by the Magistrate in not permitting the parties to continue with discovery, now that this Honorable Court has reopened the discovery phase of the case.

31. Because discovery has been reopened by this Honorable Court, plaintiff is entitled to issue deposition notices, discovery demands and subpoenas, to the defendants seeking additional testimony and records from corporate witnesses regarding health and safety issues relevant to the underlying basis of this matter. Fed.R.Civ.P. 26; 30; 34.

32. Additionally, plaintiff is entitled to have the defendants' expert witnesses' disclosures

---

[4] Curiously, while the purported basis for the defendants' belated discovery is to ascertain when plaintiff worked for Domino's (a pre-accident part-time employer), defendants did NOT serve a subpoena on Domino's for this information, but instead on a law firm, raising issues of both privilege and defendants' newest attempt to improperly taint plaintiff as being litigious. *Cf*, <u>Outley v. City of New York</u>, 837 F.2d 587 (2d Cir. 1988). *See,* **Docket Entry 104**, *see also* **Exhibit F**.

[5] Despite defendants' ongoing duty to furnish same. Fed.R.Civ.P. 26(e)(2).

fully conform to the requirements of Fed.R.Civ.P. 26(a)(2)(B), with particular focus on Fed.R.Civ.P. 26(a)(2)(B)(iv) and (v).

<u>Defendants' Videos</u>

33. During the Pre Trial Conference of May 14, 2021, this Honorable Court pointedly asked defense counsel, the trial attorney for defendants, if he inquired whether or not there were videos of the loading of the subject trailer:

> THE COURT: That's not what I asked. I inquired, did you inquire whether or not there were videos?
> MR. BRODY: Well, my understanding, Judge, is this demand—
> (**Exhibit A**, p. 32, l. 3-6)

34. While after the May 24, 2021 Conference, defendants submitted an affidavit that states that their surveillance video system automatically overwrites videos every three months (*See* **Exhibit F**), the affidavit is deficient in a number of respects.[6]

35. Overwritten does NOT mean deleted, destroyed and unavailable; even if the videos were deleted (worse than overwritten), they may still be available. The affidavit fails to address if anyone ever attempted to inspect or examine their hard drive to see if the images of the loading of this trailer were "ghosted" or cloned" onto the hard drive after being overwritten. *See* <u>Antioch Co. v Scrapbook Borders, Inc.</u>, 210 F.R.D 645, 652 (D Minn 2002) ("Rule 26(a)(1)(B) requires ("Rule26(a)(1)(B) requires description and categorization of computerized data, including deleted e-mails, and stating that "[t]he disclosing party shall take reasonable steps to ensure that it discloses any back-up

---

[6] In the defendants' correspondence with Magistrate McCarthy dated May 21, 2021, P. 4 (**Docket Entry 142),** defense counsel tacitly concedes they never previously served the Affidavit concerning the video.

copies of files or archival tapes that will provide information about any 'deleted' electronic data"); *see also* <u>*Rowe Entertainment, Inc. v. The William Morris Agency, Inc.,*</u> 205 F.R.D. 421, 427, 431 (S.D.N.Y.2002); <u>*McPeek v. Ashcroft,*</u> 202 F.R.D. 31, 31, 34 (D.D.C.2001); <u>*Kleiner v. Burns,*</u> 2000 WL 1909470 (D.Kan. December 15, 2000); <u>*Simon Property Group L.P. v. mySimon, Inc.,*</u> 194 F.R.D. 639, 640 (S.D.Ind.2000); <u>*Playboy Enterprises v. Welles,*</u> 60 F.Supp.2d 1050, 1053 (S.D.Cal.1999).

36. As noted above, even where documents have been deleted from a hard drive, the computer may be "cloned" and these records recovered. See, <u>Etzion v Etzion</u>, 7 Misc.3d 940, 943 (Sup. Nassau 2005):

> Notwithstanding an effort to delete certain information, computer experts assert that they can nonetheless "clone" a hard drive and restore or rescue deleted documents. Some files may need review by the court or by a referee to determine if they contain privileged data. (See, Antioch Co. v Scrapbook Borders, Inc., 210 FRD 645 [D Minn 2002].)

37. Moreover, the affidavit fails to state what was purportedly searched for, how the search was allegedly conducted, how records are kept, how long did the search take and a number of other issues. See e.g., <u>Jackson v City of New York</u>, 185 A.D.2d 768 (1st Dept 1992) and its progeny. See also, <u>Lewis v. City of New York</u>, 17 Misc. 3d 559, 569-570 (Sup. Bronx 2007).

38. . The affidavit fails to state when and how the defendants actually learned of this incident, and what investigation they did upon learning of this incident.

39. Among the items sought in plaintiffs' discovery and deposition notices were defendants' procedures to recover such information and perform an investigation. Plaintiff noted in his opposition and cross motion to quash (**Docket Entries 132, 134**) how defendants

have been repeatedly sanctioned by the courts for failing to provide this information as a pattern of obstruction. *See e.g.*, <u>*Testa v. Wal-Mart Stores, Inc.*</u>, 144 F.3d 173, 177-178 (1st Cir. 1998); <u>Rivera v. Sam's Club Humacao</u>, 386 F. Supp.3d 188, 207-209 (D.P.R. 2018); <u>Cain v. Wal-Mart Stores, Inc.</u>, 2018 WL 1434819 (E.D. N.C. 2018); <u>Thaqi v. Wal-Mart Stores East, LP</u>, 2014 WL 1330925 *3, 10 (E.D.N.Y. 2014); <u>Patton v. Wal-Mart Stores, Inc.</u>, 2013 WL 6158467 *2, 4 (D. Nevada, 2013); <u>Anderson v. Wal-Mart Stores, Inc.</u>, 2011 WL 4621286 *1 (D.Nevada 2011).

40. In <u>Patton v. Wal-Mart Stores, Inc.</u>, 2013 WL 6158467 *2, 4 (D. Nevada, 2013), the court noted that defendants' Directive 26-5 specifically addresses what and how defendants are required to do in order to investigate an incident such as this one, and reveals what records they keep, including videotapes and the time periods and cameras views to be produced.

41. In <u>Patton v. Wal-Mart Stores, Inc.</u>, *supra*, the Court discussed Wal-Mart's policy of routinely destroying surveillance footage:

> During the court's hearing, Walmart argued that the court cannot conclude that Walmart should have known to preserve the footage because doing so requires imputing legal knowledge to Walmart's layperson employees. The court disagrees. First, Walmart itself requires layperson employees to comply with the law's discovery and evidentiary requirements. Its document preservation directive alters employees, in boldfaced type, to preserve all "potentially relevant" evidence because the company "may have a legal obligation to preserve information." (*See* Document Preservation Directive (#26-5) at 1). Second, the court does not need to impute legal knowledge to Walmart employees to conclude that Walmart should have known to preserve the footage because the footage is "relevant" under a common, everyday understanding of the word. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 985 (10th ed. 2001) (defining "relevant" as "1 a: having significant and demonstrable bearing on the matter at hand b: affording evidence tending to prove or disprove the matter at issue or under discussion.").

Accordingly, the court finds that Walmart's duty to preserve the footage arose when Walmart decided to implement the document preservation directive in the manner described by Walmart's Asset Protection Manager. (*See* Aff. of Kelli Briggs, Walmart Asset Protection Manager (#32-3) at 1-3) (explaining how Walmart implements the document preservation directive).

Walmart's document preservation directive mandates the destruction of potentially relevant evidence as a matter of course. Walmart's duty to preserve the evidence, therefore, attached the date Walmart decided to destroy potentially relevant evidence as a matter of course because that date marks the first time Walmart knew or should have known that it would be destroying potentially relevant evidence. *Kitsap Physicians Serv.,* 314 F.3d at 1001 (citing *Akiona v. United States,* 938 F.2d 158, 161 (9th Cir. 1991) ("Defendants engage in spoliation of documents as a matter of law only if they had `some notice that the documents were potentially relevant' to the litigation before they were destroyed.").

It is unnecessary for the court to decide when, exactly, Walmart decided to implement the document preservation directive in the manner described by Walmart's Asset Protection Manager. It is sufficient for purposes of this motion that the directive was in place when Patton fell. (*See* Aff. of Kelli Briggs (#32-2 at 1-3). Similarly, because it is Walmart's standard operating procedure to destroy potentially relevant evidence, it is also unnecessary for the court to decide when Walmart had notice that Patton would sue. Walmart's policy existed when Patton entered the store.

42. In <u>Stedford v. Wal-Mart</u>, 2016 WL 3462132, *11 (D. Nev. June 24, 2016), the District

Court noted Wal-Mart's ability to produce video and surveillance evidence correlated

with its usefulness for the chain:

The court is also troubled by experience in presiding over many Wal-Mart cases in more than fifteen years on the bench in which Wal-Marthas had and produced video evidence when it is favorable to Wal-Mart, e.g., when video shows the plaintiff failing to pay attention, drunk or otherwise impaired, causing or contributing to the accident, or immediately getting up after a fall and continuing shopping. In a number of prior cases Wal-Mart has explained its failure to preserve video by claiming the incident was not captured on camera. Wal-Mart has often explained that the reason certain areas of stores do not have video footage is because its cameras are primarily focused on high traffic, high security areas, and in particular its cash registers. This incident occurred in front of the front cash register area of the store. An abrupt end to fifty minutes of video in front of the cash registers ten minutes before the accident is therefore inherently suspect in light of what the court has been told about how Wal-Mart focuses its camera coverage in prior cases.

Moreover, in response to this motion and in many prior Wal-Mart cases the court and opposing counsel are told that Wal-Mart is self-insured. The court and opposing counsel have frequently been reminded by Wal-Mart's litigation counsel and company representatives in settlement conferences that any settlement or judgment comes out of the individual store manager's "bottom line", i.e., potential store profit. The court and opposing counsel are often told that payment of settlements will reduce not only a store's profitability but will result in less money available for employee bonuses. Knowledge that paying a settlement or judgment will reduce profitability and adversely affect employee bonuses at the store level may legitimately be intended to give managers and employees an incentive to see that the premises are safely maintained. However, that knowledge may have the opposite effect on impressing on managers and employees the duty to preserve potentially unfavorable evidence.

Wal-Mart's opposition attempts to shift the burden to Plaintiff to conduct discovery to determine why there is no video of the incident. This unavailing argument is straight out of "the best defense is a good offense" playbook. The argument overlooks the fact that it is Wal-Mart's obligation to preserve, not Plaintiff's obligation to explore, through expensive discovery, why the evidence was not preserved. Certainly, if Stedeford had conducted discovery, the record would be more fully developed, and the court would have information on which to determine whether the video was intentionally or merely negligently destroyed. Wal-Mart had the ability to find out the truth but failed to do so. There is no question that the soap bottle was intentionally destroyed. Store level employees did not understand why it was relevant or should have been kept, even as litigation counsel told the court he was sorry it was destroyed because he could have explored a potential claim against a vendor or manufacturer. Wal-Mart failed in its duty to explain its preservation duties to the employees responsible in the first instance for preserving relevant evidence.

43. Plaintiff seeks discovery on these very issues so that we may ascertain what the defendants were supposed to do, what they actually did, what they learned and when they learned it. Clearly the videos of the loading of the trailer, and defendants' investigation and facts surrounding their investigation are relevant and material.

Conclusion

44. Because it is respectfully submitted that Magistrate McCarthy's May 24, 2021 Order (*See*, Minute Entry of May 25, 2021) is clearly erroneous, Plaintiffs respectfully requests this Honorable Court modify said Order to permit the plaintiff to conduct

additional discovery now that the discovery portion of this matter has been reopened,

reinstate plaintiffs' discovery notices and subpoenas,  or in the alternative, vacating or

quashing the defendants' discovery demands, subpoenas, and surveillance of plaintiff,[7]

and return the matter to Magistrate McCarthy with instructions outlining what this

Honorable Court intended when it stated discovery was being reopened.

Thank you for your attention to this matter.

Respectfully submitted,

*Robert J. Genis*

Robert J. Genis
Cc:    Michael Kremins, Esq. (via ECF)
       Scott A. Brody, Esq. (via ECF)

---

[7] Magistrate McCarthy did, however, permit depositions of defendants' investigators that conducted the surveillance of the plaintiff. Plaintiffs have written to defendants' seeking to schedule these depositions, (**Exhibit G**), but defendants have failed to respond, yet another example of their obstructing discovery.