WM 17-353 PO
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

LUIS UZHCA and MARIA SMITH,                         Docket No.: 17CV03850

                        Plaintiffs,

                                                                        **AMENDED JOINT PRE-TRIAL ORDER**

      -against-

WAL-MART STORES, INC., SAM'S EAST, INC. and
INLAND-GREENBURGH DELAWARE BUSINESS
TRUST,

                        Defendants.
-----------------------------------------------------------------------X

ii.    **The names, law firms, addresses, and telephone and fax numbers of trial counsel**

Plaintiff:    Michael F. Kremins, Esq.
                Raskin & Kremins, LLP
                160 Broadway - 4th Floor
                New York, New York 10038
                Phone: (212) 587-3434
                Fax: (212) 608-1659
                E-Mail: kremjet@gmail.com

                Trial Counsel:
                Robert J. Genis, Esq.
                Sonin & Genis, LLC
                1 Fordham Plaza – Suite 907
                Bronx, NY 10458
                Phone: (718)561-4444
                Fax: (718)561-2162
                Email: bob.genis@soningenis.com
                Cell: (917)576-6376

Defendants:    Scott A. Brody, Esq.
                    Brody, O'Connor & O'Connor, Esqs.
                    535 Eighth Avenue, 19th Floor
                    New York, New York 10018
                    Phone: (212) 233-2505
                    Fax:    (212) 233-2506

E-Mail: scott.brody@brodyoconnor.com

**iii. A brief statement by plaintiff as to the basis of subject matter jurisdiction, and a brief statement by each other party as to the presence or absence of subject matter jurisdiction.**

Plaintiffs:   Plaintiffs assert that this Court has subject matter jurisdiction as the citizenship of the parties is diverse and the amount in controversy is in excess of $75,000.00.

Defendants:   Defendants concur that this Court has subject matter jurisdiction as the citizenship of the parties is diverse and the amount in controversy is in excess of $75,000.00.

**iv. A brief summary by each party of the claims and defenses that, according to the party, remain to be tried, without recitation of evidentiary matters but including citations to all statutes relied upon. Such summaries shall also identify all claims and defenses previously asserted which are not to be tried;**

   Plaintiff:   Plaintiff Luis Uzhca was injured as a result of the negligence of the defendants. Specifically, Defendants through their employees/servants/agents, negligently placed, loaded, and overloaded a trailer with heavy bales of recycled cardboard, each bale weighing somewhere between 600-900 lbs, they were shipping. The defendants failed to properly secure said cargo despite knowing the trailer would traverse one or more road depression that might cause such cargo to spill/move, causing and creating an unsafe condition. Not only did Defendants fail to give warning of such unsafe conditions, the manner in which they had caused the trailer to be loaded made it impracticable for the plaintiff to inspect the cargo and ensure it was properly loaded. This constitutes a violation of Federal Motor Carrier Safety Administration Regulation 392.9(b)(4). Defendants violated an ISRI guideline and other applicable standards, good & accepted practices and procedures. Moreover, said unsafe and defective conditions were latent and not plainly evident to plaintiff. As a result, the cargo shifted while being transported same, and as such, was a proximate cause of harm to the plaintiff when these bales spilled out and fell onto plaintiff when the trailer door was opened.

   Plaintiff sustained permanent injuries and can no longer work full time at his prior job, and has sustained loss of earnings in addition to the following injuries:
- right bimalleolar ankle fractures treated with Open Reduction Internal Fixation surgery, and two subsequent surgeries, and may require future and further surgeries;
- left shoulder - torn rotator cuff [supraspinatus tendon and subcapularis tendon, anterior labrum, treated with conservative modalities and surgery;
- herniated cervical discs, treated with conservative modalities and surgery.

Plaintiff's wife also asserts a claim for her loss of her husband's services/consortium.

Defendants:   With regards to the issue of liability, defendants assert that SAM'S EAST, INC., as shipper, is not responsible for securement of the load as the act of loading and the act of securing are two separate physical actions with SAM'S EAST, INC. responsible only for loading and the carrier, American Paper, responsible for

2

securement. Moreover, under the Savage rule, SAM'S EAST, INC. is only liable for latent and concealed defects in the loading that could not be discerned by the ordinary observation of the agents of the carrier, here American Paper. The standard is an objective one, not a subjective one. Since it was plainly evident to American Paper, and to anyone making reasonable use of their senses, that the rear of the trailer was loaded to within 12 inches of the ceiling, that is, that the bales were packed three high at the rear of the trailer, no latent and/or concealed defect in the loading ever existed for which SAM'S EAST, INC. could here be held liable. The load was checked by and accepted by American Paper before the doors were closed and the trailer left the Sam's Club at which point SAM'S EAST, INC. was no longer in control of the trailer and no longer responsible for its contents.

Plaintiff's claim that the bales needed additional securement, as stated above, is belied by the testimony of plaintiff's own expert that the bales did not require any additional securement and, in any event, securement is the responsibility of American Paper, not SAM'S EAST, INC.

Defendants assert that the ISRI guideline found on the internet by plaintiff's expert has not been shown to be an accepted "industry standard." In fact, both American Paper and SAM'S EAST, INC. agreed that the trailer should be packed until it was full. Plaintiff has not pointed to any court opinion, industry document, or any other evidence establishing both that the ISRI guideline was an "industry standard" in 2015 and that it applied to SAM'S EAST, INC.

Plaintiff was the sole proximate cause of his accident. He observed a bale of cardboard leaning against the top of the left-hand trailer door before he opened that door. All witnesses, including plaintiff's expert, agreed that an individual opening the left-hand door of a trailer is required, first, to look inside to be sure nothing is up against that door or he runs the risk of being injured by a load falling from the trailer when that door was opened. Plaintiff saw the load against the top of the left-hand trailer door, but opened the door nonetheless.

The only injury causally related to plaintiff's accident was to the ankle. The purported injuries and surgeries to the shoulder and spine are not causally related to the accident at issue.

**v. A statement as to the number of trial days needed and regarding whether the case is to be tried with or without a jury;**

The case will be tried before a jury. All sides respectfully submit that because of the number of physicians and expert witnesses, that 10-15 trial days may be required.

**vi. A statement as to whether or not all parties have consented to trial by a magistrate judge, without identifying which parties do or do not consent;**

All parties have not consented to trial by a magistrate judge.

**vii. Any stipulations or agreed statements of fact or law to which all parties consent;**

1. Sam's East, Inc. is the operator of the Sam's Club in Elmsford, New York and Walmart Inc (fka Wal-Mart Stores, Inc) is, indirectly, the parent company of Sam's East, Inc.

2. Sam's East, Inc. was a customer of American Paper.

3. American Paper would move recyclable cardboard from the Sam's Club in Elmsford, New York to American Paper's location in Tarrytown, New York.

4. An American Paper driver would deliver an empty 53-foot trailer to Sam's Club.

5. At Sam's Club, the empty trailer would be placed in bay seven of the store's loading dock.

6. Sam's Club's employees would compact cardboard boxes together into bales that were approximately 36 inches high and five feet wide.

7. The bales were then loaded onto the trailer using forklifts.

8. The bales were loaded from the front of the trailer to the rear, stacking them three high and in one row.

9. If the loaded materials were tilting in anyway, the forklift operator was required to remove those bales and restack them in the trailer.

10. When fully stacked, the bales would be within 12 inches of the trailer's ceiling.

11. Once a trailer was almost full, Sam's East would call American Paper to schedule a pickup.

12. American Paper would, in turn, send a driver to bring another empty trailer to Sam's Club.

13. The driver would unhook the empty trailer upon arrival at Sam's Club and then hook the truck cab to the full trailer at bay seven.

14. The driver would pull the full trailer about 60 to 80 feet away from the loading docks – going over a storm water drain and with the trailer's rear doors open- and park it on the side of the building.

15. Once packed, the driver could not walk down either side of the trailer to inspect. However, he could observe that the rear of the trailer was packed three bales high.

16. The driver would close the trailer's doors and drive to American Paper.

17. The distance from Sam's Club to American Paper was approximately five miles and the drive would take 10 minutes.

18. Luis Uzhca worked at American Paper located at 15 S. Depot Plaza, Tarrytown, New York.

19. Uzhca's job included sweeping/cleaning, and getting truck cabs, securing them to one of approximately 10 or 11 trailers parked onsite, and moving the chosen trailer to within eight to ten feet of the loading dock.

20. Once a trailer was about eight to ten feet away from the loading dock, Uzhca would open its rear doors and then finish backing it into the loading dock.

21. On May 29, 2015, at approximately 10:00 a.m., Uzhca's supervisor, Winston Ash, identified a trailer that he wanted Uzhca to move to the loading dock.

22. Uzhca retrieved the truck cab and backed it into the trailer, causing the two to physically connect.

23. After connecting the truck cab and the trailer, Uzhca got out of the cab to make sure the connection was proper.

24. Uzhca then lifted up the legs of the trailer so that it could be moved.

25. Uzhca backed the trailer into a position approximately eight feet away from the loading dock.

26. Uzhca got out of the truck cab and proceeded toward the rear of the trailer.

27. Uzhca opened the right-hand door of the trailer and secured it to prevent the door from closing.

28. Uzhca unlocked the left-hand door of the trailer.

29. Cardboard bales fell out of the trailer and onto Uzhca, knocking him to the ground, and bales fell onto him.

**viii. A list of all trial witnesses, indicating whether such witnesses will testify in person or by deposition, and a brief summary of the substance of each witness's testimony. Deposition**

**testimony will only be permitted if allowed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence and if the witness is not otherwise testifying in person;**

Plaintiff:

1. Walter Caminade – formerly of Sam's Club, will be subpoenaed for in-person testimony. Mr. Caminade is expected to testify as to the duties of defendant to ensure that the bales of recycled cardboard were properly loaded, placed, and secured; that defendant packed trailers to the ceiling in order to maximize their profits; that defendants herein failed to comply with their own good and accepted practices/standards of care, proximately causing this incident.

2. Brooks Rugemer – liability expert. Is expected to testify in person as to how defendants violated applicable standards, good and accepted practices/standards of care, and the applicability of ISRI standards; defendants negligently loaded, placed, overloaded and failed to properly secure the bales of recycled cardboard, and how said negligence was a proximate cause of the subject incident. He is also expected to testify that Defendants' violation of FMCSA 392.9(b)(4) and as such the inspection of the cargo by the driver of the commercial motor vehicle was made impracticable because of the manner in which the trailer had been loaded.

3. Robert O'Neil – Gen. Manger of Sam's Club, will be subpoenaed for in-person testimony. Mr. O'Neil is expected to testify as to defendants' practices in loading/placing/securing and overloading trailers with bales of recycled cardboard to reduce costs and increase profits.

4. Cesar Javier – employee of American Recycling, will be subpoenaed for in-person testimony. Mr. Javier is expected to testify as to defendants' practices in loading/placing/securing and overloading trailers with bales of recycled cardboard that because of the manner that defendants loaded/placed/overloaded and failed to secure, resulted in bales not being level, unstable and about their movement.

5. Luis Uzcha – plaintiff. Is expected to testify in person as to how this incident occurred, his experience performing his job prior thereto, his injuries, treatment, conscious pain and suffering, affect on his ability to work, loss of income, medical expenses, loss or diminishment of ability to enjoy life, emotional upset and distress that naturally arose from such an incident, the sequelae and manifestations of his injuries, fear of future surgeries/medical condition and related issues that reasonably flow therefrom.

6. Maria Smith - plaintiff. Is expected to testify in person as to how the injuries she observed her spouse endure, and their affect on him, and on her,

their family/children, the loss of services, his injuries, treatment, conscious pain and suffering, affect on his ability to work, enjoy life, emotional upset and distress that naturally arose from such an incident, the sequelae and manifestations of his injuries, fear of future surgeries/medical condition and related issues that reasonably flow therefrom.

7. Dr. Zelazny – treating orthopedic surgeon, will be subpoenaed for in-person testimony. Dr. Zelazny is expected to testify as to the right ankle injuries sustained [and other injuries], the two surgeries he performed and their circumstances, their causation, treatment and necessity for same, permanence, disability, prognosis, future treatment and reasonable costs/value of same, affect on function and use, sequelae, manifestations, and pain and suffering.

8. Dr. Nicholas Argearkis - treating orthopedic surgeon, will be subpoenaed for in-person testimony. Dr. Argerakis is expected to testify as to the right ankle injuries sustained [and other injuries], the surgery he performed and its circumstances, their causation, treatment and necessity for same, permanence, disability, prognosis, future treatment and reasonable costs/value of same, affect on function and use, sequelae, manifestations, and pain and suffering.

9. Dr. Jason Gallina - treating orthopedic surgeon, will be subpoenaed for in-person testimony. Dr. Gallina is expected to testify as to the spinal injuries sustained [and other injuries], the surgery he performed and its circumstances, their causation, treatment and necessity for same, permanence, disability, prognosis, future treatment and reasonable costs/value of same, affect on function and use, sequelae, manifestations, and pain and suffering.

10. Dr. Darren Friedman - treating orthopedic surgeon, will be subpoenaed for in-person testimony. Dr. Friedman is expected to testify as to the left shoulder injuries sustained [and other injuries], the surgery he performed and its circumstances, their causation, treatment and necessity for same, permanence, disability, prognosis, future treatment and reasonable costs/value of same, affect on function and use, sequelae, manifestations, and pain and suffering.

11. Dr. Michael Hearns – treating Occupational Health and Pain Management physician, will be subpoenaed for in-person testimony. Dr. Hearns is expected to testify as to the injuries sustained, their causation, treatment and necessity for same, permanence, disability, prognosis, future treatment and reasonable costs/value of same, affect on function and use, sequelae, manifestations, and pain and suffering.

12. Dr. Dov Berkowitz - treating orthopedic surgeon, will be subpoenaed for in-person testimony. Dr. Berkowitz is expected to testify as to the left shoulder injuries sustained [and other injuries], their causation, treatment and necessity for same, permanence, disability, prognosis, future treatment and reasonable costs/value of same, affect on function and use, sequelae, manifestations, and pain and suffering.

13. Dr. Morton Finkel – treating neurologist, will be subpoenaed for in-person testimony. Dr. Finkel is expected to testify as to the spinal injuries sustained [and other injuries], their causation, treatment and necessity for same, permanence, disability, prognosis, future treatment and reasonable costs/value of same, affect on function and use, sequelae, manifestations, and pain and suffering.

14. Dr. Steven Bernstein - treating podiatrist, will be subpoenaed for in-person testimony. Dr. Friedman is expected to testify as to the right ankle injuries sustained, their causation, treatment and necessity for same, permanence, disability, prognosis, future treatment and reasonable costs/value of same, affect on function and use, sequelae, manifestations, and pain and suffering.

15. Dr. Tong Li – treating pain management physician, will be subpoenaed for in-person testimony. Dr. Hearns is expected to testify as to the injuries sustained, their causation, treatment and necessity for same, permanence, disability, prognosis, future treatment and reasonable costs/value of same, affect on function and use, sequelae, manifestations, and pain and suffering.

16. Dr. Lisa Daley - Dr. Daley is a treating Physical Medicine & Rehabilitation physician, and will be subpoenaed for in-person testimony. and is expected to testify as to the injuries sustained, their causation, treatment and necessity for same, permanence, disability, prognosis, future treatment and reasonable costs/value of same, affect on function and use, sequelae, manifestations, and pain and suffering.

17. Dr. Richard Radna – is a treating neurosurgeon, and will be subpoenaed for in-person testimony. and is expected to testify as to the injuries sustained, their causation, treatment and necessity for same, permanence, disability, prognosis, future treatment and reasonable costs/value of same, affect on function and use, sequelae, manifestations, and pain and suffering.

**Defendant objects to the testimony of Drs. Argerakis, Gallina, Hearns, Berkowtiz, Finkel, Li and Daley. While plaintiff disclosed Drs.**

**Bernstein, Zelazny, Radna, and Friedman as expert witnesses in this matter, Drs. Argerakis, Gallina, Hearns, Berkowtiz, Finkel, Li and Daley were not disclosed as witnesses in plaintiff's Rule 26 disclosures. Further, Dr. Radna, by counsel at his deposition, is limited to testimony regarding plaintiff's alleged cervical spine injuries.**

18. Diego Uzhca – child of plaintiffs, is expected to appear for in-person. testimony, and give testimony with respect to plaintiff Luis Uzcha's injuries, difference between pre-incident conditions, activities, services provided and post-incident, including but not limited to limitations, loss/diminishment of activities, services etc., pain and suffering, loss of enjoyment of life, emotional upset that they observed.

19. Silvia Uzhca - child of plaintiffs, is expected to appear for in-person testimony, and give testimony with respect to plaintiff Luis Uzcha's injuries, difference between pre-incident conditions, activities, services provided and post-incident, including but not limited to limitations, loss/diminishment of activities, services etc., pain and suffering, loss of enjoyment of life, emotional upset that they observed.

20. Monica Uzhca - child of plaintiffs, is expected to appear for in-person testimony, and give testimony with respect to plaintiff Luis Uzcha's injuries, difference between pre-incident conditions, activities, services provided and post-incident, including but not limited to limitations, loss/diminishment of activities, services etc., pain and suffering, loss of enjoyment of life, emotional upset that they observed.

21. Diana Uzhca - child of plaintiffs, is expected to appear for in-person testimony, and give testimony with respect to plaintiff Luis Uzcha's injuries, difference between pre-incident conditions, activities, services provided and post-incident, including but not limited to limitations, loss/diminishment of activities, services etc., pain and suffering, loss of enjoyment of life, emotional upset that they observed.

**Defendant objects to the production of Diego, Silvia, Monica, and Diana Uzhca as witnesses in this matter as they were not disclosed by plaintiff during the discovery phase of this proceeding.**

22. Plaintiff reserves the right to read from portions of depositions from: Robert O'Neil, Cesar Javier on his direct case, and to read responsive portions from all depositions utilized by defendants, and for impeachment purposes [impeachment includes transcripts from other matters of all witnesses that testify].

    23. P.O. Caoili is expected to appear for in person testimony under subpoena and is expected to give testimony about what was seen by the officer at the scene and what was said to him; the officer's observations.

    **Defendant objects to the production of P.O. Caoili as a witness in this matter as he was not disclosed by plaintiff during the discovery phase of this proceeding.**

Plaintiff reserves the right to call rebuttal witnesses at trial. Plaintiff reserves the right to call any witnesses identified in defendants' witness list. Plaintiff reserves the right to use deposition testimony to contradict or impeach the testimony given by any deponent as a witness, or for any other purpose allowed by the Federal Rules of Evidence, including, but not limited to, if a witness fails to appear as subpoenaed and/or to refresh recollection.

Plaintiff further reserves the right to object to the defendants' expert witnesses on the ground of their qualifications and/or the basis of the testimony that is anticipated.

Defendants: 1. Winston Ash, formerly of American Paper, will be subpoenaed for in-person testimony. Mr. Ash is expected to testify that it was the responsibility of American Paper, as the carrier, to check the trailer to make sure it was properly loaded before it left the Sam's Club. He will also testify that every customer of American Paper packed the trailers up to the ceiling of the trailer, not just Sam's East, Inc., and that he did not recall ever having a problem with how Sam's East, Inc. packed the cardboard trailer.

    2. Robert O'Neill, formerly of Sam's East, Inc., will be subpoenaed for in-person testimony. Mr. O'Neill is expected to testify that he inspected the loading of the American Paper trailer every time he went to unlock the compactor for use by an associate. If he ever observed any bales that were tilted, which only occurred a few times in his then seven-year employment with Sam's East, Inc., he had a forklift operator remove those bales and restack them in the trailer. He had observed approximately 50 American Paper trailers being pulled away from the loading dock with open doors and then driven over the bump caused by the storm water drain in the parking lot and never observed any of the bales stacked inside those trailers move.

    3. Brian Kelly, formerly of American Paper, will be subpoenaed for in-person testimony. Mr. Kelly is expected to testify that he never picked up a loaded trailer from the Elmsford Sam's Club that had any problems or issues. He will also testify that it was his responsibility as an agent of the carrier to check the load before closing the trailer doors.

**Plaintiff objects to witnesses 1-3 with respect to testimony involving other non-parties or that is in the nature of expert testimony or legal duties.**

4. Christopher Ferrone, BSEM will give in-person testimony. Mr. Ferrone is expected to testify that the ISRI guideline found on the internet by plaintiff's expert is not a recognized industry standard and that it was the responsibility of American Paper, the carrier, not Sam's East, Inc., the shipper, to ensure the safety of the load. Further, he will testify that the *Savage* rule applies here and that the standard is an objective, not a subjective one.

5. Scott V. Haig, M.D. will give in-person testimony. Dr. Haig is expected to testify that only the right ankle fracture is causally related to the accident at issue and, further, that plaintiff refused active ranges of motion when Dr. Haig examined him on March 21, 2019.

Defendant reserves the right to call rebuttal witnesses at trial. Defendant reserves the right to call any witnesses identified in Plaintiff's witness list. Defendant reserves the right to use deposition testimony to contradict or impeach the testimony given by any deponent as a witness, or for any other purpose allowed by the Federal Rules of Evidence, including, but not limited to, if a witness fails to appear as subpoenaed and/or to refresh recollection.

**ix. A designation by each party of deposition testimony to be offered in its case in chief and any counter-designations and objections by any other party;**

Plaintiff:

1. Walter Caminade: pages: 15, 22, 23- 26, 29-31, 33-36, 39-40, 48-49, 53, 54, 55, 57, 64, 66-67, 69, 71, 72, 75, 76, 77-78, 80, 81, 82-84, 85-92, 95, 96-97, 98-101, 102-103, 104-105, 106, 108, 110-113, 114-115.

2. Cesar Javier: pages: 12, 15, 21, 22, 29, 32, 44-45, 50-51, 60, 64, 66, 67.

3. Robert O'Neil: pages: 13, 33-35, 37-40, 42-47, 49, 52-56, 60-63, 67, 68, 69, 70, 71-74, 76, 77, 79, 86-87, 89-92, 95, 97-98, 100, 101, 103-104, 118, 119-120, 121, 124.

4. Winston Ash: pages: 12, 19-20, 27, 28-30, 33, 35-37, 40, 41-42, 43, 46, 48, 49-50, 52-55, 64, 67, 77, 78, 83, 85-87, 89, 91, 95, 99, 107-108, 111.

5. Brian Kelly: pages: 29, 33, 34, 107-108.

6. Christopher Ferrone: pages: 190-195, 204-206, 217-218, 233, 238, 240, 241 242, 243- 244, 245, 246, 250, 251, 258-259, 261-263, 279.

7. Brooks Rugemeyer: pages: 25, 26, 27, 29, 34, 43

11

       8. Luis Uzcha: pages: 25, 27, 33, 34, 36, 51, 52, 53-54, 55-56,  57, 60, 61-63, 64, 65, 66, 67, 68-70, 74-79, 81-82, 95-98, 100, 103, 104.

Plaintiff reserves the right to use deposition testimony to contradict or impeach the testimony given by any deponent as a witness, or for any other purpose allowed by the Federal Rules of Evidence including if a witness fails to appears as subpoenaed and/or to refresh recollection.

Defendant:    A.  Plaintiff: pages 8, 15, 25, 27, 34-35, 38, 52, 54, 55-56, 57, 60-61, 62-63, 64-65, 66, 67-68, 69-70.

        B.  Winston Ash: pages 12, 15, 19-20, 77-78, 89, 95, 99.

        C.  Brian Kelly: pages 17-18, 22, 36, 42-43, 80-82, 107-108, 119.

        D.  Robert O'Neill: pages:  38, 40-42, 44-46, 53-54, 67, 68, 69-70, 72-73, 74, 76-79, 89-91, 122.

        E.  Brooks Rugemer: pages 19, 25-26, 29, 30, 31-32, 38-39, 50-51, 53-54, 57, 64.

Defendant reserves the right to use deposition testimony to contradict or impeach the testimony given by any deponent as a witness, or for any other purpose allowed by the Federal Rules of Evidence including if a witness fails to appears as subpoenaed and/or to refresh recollection.

**x. A list by each party of exhibits to be offered in its case in chief, with one star indicating an objection by the opposing party based on authenticity. When a party objects to an exhibit on any grounds other than authenticity, the objection should be noted by indicating the Federal Rule of Evidence that is the basis for the objection;**

Plaintiff:
1. Tractor Trailer Summary Friday May 29, 2015 [5804/3263]*;
2. American Paper Mills Supply, LLC, Inbound papers/bill of lading*;
3. American Recycling Accident Reports*;
4. Police Aided Report*
5. Walmart policies re: recycle empty cardboard, Trailer loading, Sam's Club Packing Standards [see response to Court Order of May 22, 2019]; FRE 401-402
6. ISRI standards,/guidelines and diagrams showing loading/placement/securing of cargo*; FRE 402, 403
7. Photographs of trailer [from Deposition Brian Kelly on March 25, 2019]*;   FRE 402 403
8. Medical Records*:
    a. Ambulance Call Report;
    b. Westchester Medical Center, 100 Woods Rd, Valhalla, NY 10595 [MRN # 766733];

    c. Westchester Medical Center Advanced Orthopedics/Advanced Physician Services, 19 Bradhurst Avenue, Hawthorne, NY 10532 [MRN # 766733];
    d. HealthPlus Surgery Center, 190 Midland Avenue, Saddlebrook, NJ 07663 [MRN 23791];
    e. New Horizon Surgical Center, LLC, 680 Broadway, Paterson, NJ 07514 [MRN 3030209];
    f. Hudson Regional Hospital, 55 Meadowlands Parkway, Secaucus, NJ 07094 [DOS: 12-7-18];
    g. Burke Rehabilitation Hospital, 785 Mamaroneck Avenue, White Plains, NY 10605 [MRN # M000195872]
    h. Lenox Hill Radiology, 61 E. 77th Street, NY, NY 10075 [MRN 2736871R];
    i. Doshi Diagnostic, Fordham location Bronx [Chart # 3368949/3368949DS];
    j. University Orthopaedics, 19 Bradhurst Avenue, Hawthorne, NY 10532 [MRN # 766733, ID # 206607, Case # 121536851;
    k. Central Medical Services of Westrock, 360 Mamaroneck Avenue, White Plains, NY 10605/2510 Westchester Avenue, Suite 204 & 206, Bronx, NY 10461 AND OTHER LOCATIONS [Patient ID: 65636957; WCB # G1182214];
    l. Dr. Richard Radna, 1165 Park Avenue, NY, NY;
    m. Dr. Daniel Zelazny, 19 Bradhurst Avenue, Hawthorne, NY 10532;
    n. WC- Gallagher Bassett, 100 Grandview Rd, Braintree, MA 02184 [Carrier Case # 005616-000351-WC-01; WCB # G1182214]
    o. WCB, 111 Livingston Street, Brooklyn, NY 11201/ One Pierrepont Plaza, 300 Cadman Plaza West, Brooklyn, NY 11201/ White Plains, NY [Carrier Case # 005616-000351-WC-01; WCB # G1182214];

9. Posters of films, Operative/Radiology reports, pertinent medical records, anatomical diagrams, models;
10. W-2/tax returns/WC records.

Defendant: Defendant objects to plaintiff's proposed exhibits as hearsay (FRE 801-802), unauthenticated, lacking foundation, not relevant (FRE 401-402), and that any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or needless presentation of cumulative evidence (FRE 403). Defendant intends to offer previously exchanged video surveillance of the plaintiff at the time of trial.

### xi. A statement of the damages claimed and any other relief sought, including the manner and method used to calculate any claimed damages and a breakdown of the elements of such claimed damages; and

1. Luis Uzhca suffered permanent personal injuries, conscious pain and suffering, loss of enjoyment of life, emotional upset/distress/shock & fright. Will be based on testimony of witnesses and medical records, diagnostic films/studies, anatomical diagrams/models;
    a. right bimalleolar ankle fractures treated with Open Reduction Internal Fixation surgery, and two subsequent surgeries, and may require future and further surgeries;

13

   b. left shoulder - torn rotator cuff [supraspinatus tendon and subcapularis tendon, anterior labrum, treated with conservative modalities and surgery, and may require future and further surgeries;
   c. herniated cervical discs, treated with conservative modalities and surgery, and may require future and further surgeries;
   d. Plaintiff's wife loss of her husband's services/consortium. Based on testimony.
2. Loss of earnings: based on testimony, W-2s/tax returns, WC records. Plaintiff was 53 years old on D/A, earning about $ 635.88/week prior to this incident = $ 33,065.76 x 6 years= $ 198,394.56 [assumes no raises/promotions/COLA etc; if 10% year increase and based on flat projection [not compounded]= $ 218,234.02. If plaintiff works until age 65, future loss of earnings approximately $ 240,000.00. If plaintiff works until age 70, then future loss of earnings $ 500,000.00. Plaintiff has had some part-time work in past year and this amount may be deducted from the total lost earnings.
3. Medical and future medical expenses: based on testimony as to reasonable value/cost, and billing records/WC records. Approximately $ 500,000.00 - $ 600,000.00 past medical expenses and $ 6,000,000.00 future medical expenses.
4. WC Lien: $ 570,648.40 [as of July 1, 2020].

**xii. A statement of whether the parties consent to less than a unanimous verdict.**

The defendants do not consent to a less than unanimous verdict; plaintiff consents.

_____  
Robert Genis  
Counsel for Plaintiffs

*Scott A. Brody*  
_____  
Scott A. Brody  
Counsel for Defendants